# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGOR MALYSHKO; IRINA POTEMINA,<br><br>Petitioners,<br><br>v.<br><br>WARDEN, OTAY MESA DETENTION CENTER, et al.,<br><br>Respondents. | Case No.: 3:26-cv-00069-RBM-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[Doc. 1] |

Pending before the Court is Petitioners Igor Malyshko ("Petitioner Malyshko") and Irina Potemina's ("Petitioner Potemina") (collectively, "Petitioners") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). (Doc. 1.) Petitioners claim they have been detained by United States Immigration and Customs Enforcement ("ICE") for over a year in violation of the Fifth Amendment's Due Process Clause. (*Id*. at 6.)[1] For the reasons set forth below, the Petition (Doc. 1) is **GRANTED**.

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

## I. BACKGROUND

### A. Factual Background

Petitioners "were born in the former U.S.S.R." (Doc. 6 at 2 (citing Doc. 6-1, Declaration of Igor Malyshko ["Malyshko Decl."] ¶ 1).) Petitioner Malyshko was born in present day Ukraine and Petitioner Potemina was born in present day Russia. (*Id*. (citing Malyshko Decl. ¶ 1).) On December 11, 2024, Petitioner entered the United States with their two minor children through the Otay Mesa port of entry and requested asylum. (Doc. 1-2 at 1; Malyshko Decl. ¶ 3.) That same day, Petitioners were placed in expedited removal proceedings pending a credible fear interview "due to National Security Concerns." (Doc. 1-4 at 1.) Based on information and recommendations from the National Targeting Center ("NTC"), Petitioners were not released or paroled because "national security derogatory information was found on" them. (*Id*.) They were then transferred to the Otay Mesa Detention Center. (Doc. 1-2 at 1.) Petitioners were separated from their children who were taken into custody and later placed in foster care. (*Id*.; Malyshko Decl. ¶ 4.)

Petitioners were each provided with a credible fear interview conducted b an asylum officer. (Doc. 5 at 2 (citing Doc. 5-1, Declaration of Daniel Negrin ["Negrin Decl."] ¶¶ 9, 14).) Petitioner Malyshko was interviewed on January 23, 2025, and "received a negative credible fear finding, but the finding was vacated on review by the immigration judge" on January 30, 2025. (*Id*. (citing Negrin Decl. ¶¶ 9–12).) On February 4, 2025, Petitioner Malyshko was issued a Notice to Appear which placed him in removal proceedings under 8 U.S.C. § 1229a. (*Id*., Negrin Decl. ¶ 13.)

Petitioner Potemina was interviewed on January 8, 2025, and "also received a negative credible fear finding, which was then affirmed by an immigration judge." (*Id*. (citing Negrin Decl. ¶¶ 14, 17).) The immigration judge then returned the case to DHS for Petitioner Potemina's removal to Russia. (Negrin Decl. ¶ 17.) Her removal was scheduled to take place on April 27, 2025. (*Id*. ¶ 18.) On May 29, 2025, Petitioner Potemina was issued a discretionary Notice to Appear (Doc. 5-2 at 7–8) which placed her into removal proceedings under 8 U.S.C. § 1229a "so that her case could be joined with [Petitioner]

Malyshko's case." (Negrin Decl. ¶¶ 19–20.) On June 3, 2025, an immigration judge determined he lacked jurisdiction to issue a bond because Petitioner Potemina was an "arriving alien and . . . subject to expedited removal proceedings." (*Id.* ¶ 21.) Petitioners' immigration cases were consolidated on July 10, 2025. (*Id.* ¶ 22.)

On January 9, 2026, an immigration judge determined Petitioners were removable, denied their claims for asylum, withholding of removal, and deferral of removal, and ordered them removed to Russia. (*Id.* ¶ 23; Doc. 5-2 at 12–15.) Petitioners subsequently filed an appeal with the Board of Immigration Appeals ("BIA") which is still pending. (Doc. 6 at 2; Malyshko Decl. ¶ 8.)

Over a year after their initial apprehension, Petitioners remain detained at the Otay Mesa Detention Center and their daughters are still in foster care. (Doc. 6 at 2.) Petitioners allege that five different judges presided over their case for a variety of reasons which caused a delay in the adjudication of their immigration case. (Malyshko Decl. ¶ 5.) Petitioners assert that their prolonged separation from their children has caused them severe emotional distress and led to one of their daughters being diagnosed with Major Depressive Disorder and Post-Traumatic Stress Disorder. (Doc. 1-2 at 1; Doc. 1-5 at 1.)

**B.    Procedural Background**

On January 2, 2026, Petitioners filed the instant Petition. (Doc. 1.) On January 12, 2026, the Court issued an Order to Show Cause, set a briefing schedule, and conditionally appointed the Federal Defenders of San Diego, Inc. ("Federal Defenders") to represent Petitioners. (Doc. 2 at 1–2.) Respondents filed a Return to Petition for Writ Of Habeas Corpus ("Response") on January 16, 2026 (Doc. 5), and Petitioners filed a Traverse in Support of Writ of Habeas Corpus ("Reply") on January 19, 2026 (Doc. 6).

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal

custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.  DISCUSSION

Respondents argue that Petitioners are subject to mandatory detention under § 1225(b) until their proceedings have concluded because their removal proceedings are pending and they have not been granted parole. (Doc. 5 at 6.) Petitioners do not dispute that they are detained under 8 U.S.C. § 1225(b). (Doc. 6 at 3.) Instead, Petitioners argue that prolonged mandatory detention pending removal proceedings without a bond hearing implicates due process concerns. (*Id*. at 3–11.) The Court agrees.

**A.  Jurisdiction**

As a preliminary matter, Respondents argue the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 5 at 3–4.) The Court has consistently rejected this argument, *see Constantinovici v. Bondi*, — F. Supp. 3d —, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025), and does so again in this case for the same reasons.

Petitioners "challenge only violations of ICE's mandatory duties under the Constitution." (Doc. 6 at 12.) Petitioners are therefore enforcing their "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, — F. Supp. 3d —, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original).

**B.  Due Process**

Respondents contend that Petitioners' continued detention is not unconstitutionally prolonged and does not violate due process because they are detained pursuant to § 1225(b) and "have no due process rights 'other than those afforded by statute.'" (Doc. 5 at 7–10 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).) Petitioners concede they are subject to mandatory detention under § 1225 but argue that their detention

for over a year without a bond hearing has been indefinitely prolonged in violation of the Fifth Amendment's Due Process Clause. (Doc. 6 at 4–11.)

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* In *Jennings v. Rodriguez,* the Supreme Court noted that "nothing in the statutory text [of § 1225(b)] imposes any limit on the length of detention" or "says anything whatsoever about bond hearings." 583 U.S. 281, 297 (2018). In doing so, the Supreme Court addressed an issue of statutory interpretation and expressly avoided constitutional questions. *Id.* Since the Supreme Court's decision in *Jennings*, the Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

Respondents rely on *Thuraissigiam,* where the Supreme Court rejected a habeas petitioner's argument that he could bring a due process challenge to his order of expedited removal. 591 U.S. at 107. The Supreme Court held that a noncitizen "at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* "Following the Supreme Court's decision in *Thuraissigiam,* some district courts have adopted

Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving [noncitizens] subject to mandatory detention under Section 1225(b)(1)." *Gao v. LaRose*, — F. Supp. 3d —, 2025 WL 2770633, at *3 (S.D. Cal. Sept. 26, 2025) (citing cases).

However, "[m]ost courts have ruled otherwise." *Gao*, 2025 WL 2770633, at *3 (citing cases); *see, e.g.*, *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, Case No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for citizens detained under 8 U.S.C. § 1225(b), . . . essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving [noncitizens] being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.").

The Court thus "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020). "This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving noncitizen's due process rights to admission, rather than limiting that person's ability to challenge detention." *Gao*, 2025 WL 2770633, at *3.

**C.   Prolonged Detention**

The Parties offer different frameworks for analyzing a due process challenge to prolonged detention. (*See* Doc. 5 at 9 (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); Doc. 6 at 8–11 (citing *Sanchez-Rivera v. Matuszewski*, Case No.: 22-cv-1357-MMA (JLB), 2023 WL 139801, at *5–6 (S.D. Cal. Jan. 9, 2023)).)[2] The Court adopts

---

[2] The Court notes that the *Lopez* court analyzed applied the outlined factors in the § 1226 context. *See Lopez*, 631 F. Supp. 3d at 879. The factors set forth above share significant

the multi-factor test that many other courts have relied upon to determine whether § 1225(b) detention has become unreasonable. *See Kydyrali*, 499 F. Supp. 3d at 773. Under this test, the Court considers:

> (1) total length of detention to date; (2) likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Kydyrali*, 499 F. Supp. 3d at 773 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019)).

The Court first considers the length of detention, which is the most important factor. *See Banda*, 385 F. Supp. 3d at 1106. Petitioners have been detained for more than 13 months. *See Abdul Kadir v. Larose*, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases and finding that a nearly 13-month detention weighed in favor of the petitioner); *see also Sibomana v. LaRose*, Case No.: 3:22-cv-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) ("In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (citation omitted). This factor therefore weighs in favor of Petitioners.

The second factor, the likely duration of future detention, also weighs in favor of Petitioners. Petitioners argue they "have reason to anticipate significant future detention" because "[a] BIA appeal itself can take months, and afterward, a petitioner may appeal to the Ninth Circuit." (Doc. 6 at 10.) Given Petitioners' appeal pending before the BIA, "the undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner. *Gao*, 2025 WL 2770633, at *4; *accord Abdul Kadir*, 2025 WL 2932654, at *5; *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 96533, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and Respondents "cannot predict with any degree of confidence

---

overlap with the *Lopez* factors, and the Parties have adequately briefed them.

when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years.").

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Petitioners are detained at the Otay Mesa Detention Center, which several courts have found is "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted); *see Abdul*, 2025 WL 2932654, at *5. They "have to wear uniforms, . . . can't choose what to eat, . . . can be subject to discipline if we don't follow the rules, . . . [and] are kept behind razor wire." (Malyshko Decl. ¶ 9.) Petitioners also note that "[t]hose conditions are much more damaging for Petitioners, because it has resulted in family separation and extreme hardship to their children." (Doc. 6 at 11.) This factor also weighs in Petitioners' favor.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioners or the Government. Although Petitioners chose "to appeal the denial of asylum, as is [their] right, there is no indication that [they are] responsible for undue delay in the proceedings." *See Gao*, 2025 WL 2770633, at *3; *Kydyrali*, 499 F. Supp. 3d at 773 (finding the fourth factor "weighs in favor of [the petitioner] because the record does not indicate that he has been dilatory in pursuing his rights.").

As to the fifth factor, the Court notes that Petitioners' cases were pending for thirteen months before they received an individualized merits hearing. (*See* Doc. 5 at 1–2; Negrin Decl. ¶¶ 7–8, 23.) Petitioners contend their cases were delayed beyond their control because it took six months to consolidate their proceedings and five different "immigration judges assigned to their case [who] kept leaving their role or going on vacation." (Doc. 6 at 2, 10; *see* Doc. 1-2 at 1; Malyshko Decl. ¶¶ 5–6.) Indeed, the delay during the first six months was seemingly due to the consolidation of their cases. Petitioners were first subject to expedited removal proceedings and later placed in removal proceedings under so their cases could be consolidated. On February 4, 2025, Petitioner Malyshko was placed into removal proceedings pursuant to 8 U.S.C. § 1229a after his negative credible fear finding

was reviewed and vacated by an immigration judge. (Negrin Decl. ¶¶ 10–13.) Petitioner Potemina's negative credible fear finding was affirmed by an immigration judge and she was scheduled for removal on April 27, 2025. (*Id*. ¶¶ 17–18.) On April 27, 2025, Petitioner Potemina was issued a "discretionary NTA so her case could be joined with [Petitioner] Malyshko's case." (*Id*. ¶ 19; Doc. 5 at 2.) Consequently, she was placed into removal proceedings pursuant to § 1229a on May 29, 2025. (Negrin Decl. ¶ 20.) On July 10, 2025, their cases were consolidated. (*Id*. ¶ 22.) After they were placed in removal proceedings under § 1229a, Petitioners then had "the opportunity to apply for relief from removal before an immigration judge . . ., including asylum." (Doc. 5 at 2.) However, the delay caused by immigration judge assignments "is attributable to the Government, not [Petitioners]." *See Banda*, 385 F. Supp. 3d at 1120. This factor therefore weighs in favor of Petitioners.

Lastly, the Court considers the likelihood that the removal proceedings will result in a final order of removal. Petitioners' applications for asylum, withholding of removal, and CAT relief were all previously denied. (Doc. 5-2 at 12.) This makes it more likely that the removal proceedings will result in a final order of removal. *Cf. Abdul Kadir*, 2025 WL 2932654, at *5 (finding the petitioner's grant of asylum was a strong indication that he would not receive a final order of removal). The sixth factor weighs against Petitioners.

Five of the six factors, including the most important one, weigh in Petitioners' favor. The Court therefore finds that Petitioners' detention under § 1225(b) has become unreasonably prolonged and that due process requires they be provided with a bond hearing. Accordingly, the Court **GRANTS** the Petition and declines to reach the remaining claims raised in the Petition.

## IV.   CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Accordingly, Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioners before an immigration judge within **fourteen (14) days** of entry of this Order to determine whether their continued detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioners pose a danger to the community or a risk

of flight.[3] If no hearing occurs within fourteen days of entry of this Order, Petitioners shall be released from Respondents' custody.

**IT IS SO ORDERED**.

DATE: January 30, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] This relief has been granted in similar matters. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Gao*, 2025 WL 2770633, at *5; *Abdul Kadir*, 2025 WL 2932654, at *6.